## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RICHARD HOEFT,

      Plaintiff,

      v.                                Case No. 09-C-0236

DR. MENOS AND HOLLI MEYER[1], DIRECTOR,
HEALTH SERVICES UNIT,

      Defendants.

---

## DECISION AND ORDER

---

Plaintiff Richard Hoeft, who is proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis. The plaintiff was an inmate of Fox Lake Minimum Correctional Institution (FLMCI) at all times relevant to this action. The defendants filed a motion for summary judgment which is ready for resolution and will be addressed herein.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

---

[1] Apparently, defendant Meyer's last name is actually spelled Meier. See Affidavit of Holly Meier [Meier Aff.]). Accordingly, the court will use the correct spelling in this decision and order.

## STANDARD OF REVIEW

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F.Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the court must consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587 (1986), Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides in relevant part:

(1) **Supporting of Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Rule 56(c)(4) further states: An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th

Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F. 2d 845, 849 [7th Cir. 1992]).  Any proposed findings of fact which do not set forth facts that "would be admissible in evidence" have not been included in the relevant facts.  Fed. R. Civ. P. 56(c)(4).

To the extent that an objection to a proposed finding of fact fails to cite specific evidentiary support, the objection has no weight.  See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Doe v. Cunningham, 30 F.3d 879, 881 (7th Cir. 1994).  To the extent that an objection is non-responsive to the proposed finding of fact, the objection does not create a dispute of fact.

It also is well-settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact."  Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 [7th Cir. 1998]).  A finding of fact based on an affidavit which contains conclusory legal statements and is barren of any relevant facts of which the affiant has personal knowledge is not proper under Rule 56(c).  See Resolution Trust Corp. v. Juergens, 965 F.2d 149, 152-53 (7th Cir. 1992).  Such unsupported conclusory allegations have not been included in the relevant undisputed facts.

## RELEVANT UNDISPUTED FACTS[2]

Jeffrey G. Menos, D.D.S., has been employed by the Wisconsin Department of Corrections (DOC) as a dentist at the Fox Lake Correctional Institution (FLCI) since December 31, 2006.  Since October 14, 2007, Defendant Holly Meier has been employed by the DOC as the Nursing Supervisor (Health Services Manager) at the Fox Lake Correctional Institution.  The staff at Fox Lake Correctional Institution provides the medical, dental, and optical care for the inmates at that institution and for inmates at FLCMI.  The DOC classifies

inmates by a dental code according to their dental needs.

On March 3, 2009, the plaintiff filed this action. The case was dismissed by the district judge on April 13, 2009, pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted. The plaintiff filed an appeal and on September 11, 2009, the Court of Appeals for the Seventh Circuit vacated the judgment of the district court and granted the plaintiff leave to proceed on claims against the defendant related to his dental treatment at FMCI.

On September 13, 2007, a Transfer Screening form was completed by L. Cihlar, R.N. The form indicated that the plaintiff was transferred to FLMCI. No dental needs were noted on the Transfer Screening form.

During his time as an inmate at FLMCI, the plaintiff filed four Dental Services Requests (DSR) about his dental needs: (1) a September 14, 2007 request; (2) a February 28, 2008 request; (3) an April 1, 2008 request; and (4) an April 4, 2008 request. Defendant Menos was the individual who responded to all of the plaintiff's DSRs while the plaintiff was housed at FLMCI. During his time at FLMCI, the plaintiff also submitted one Interview/Information Request. Defendant Menos was the individual who responded to this Interview/Information Request.

At no time did defendant Meier respond to plaintiff's DSRs or his Interview/Information Request relating to dental needs. Defendant Meier did not personally provide any medical treatment to the plaintiff, nor did she have any involvement in determining the priority of the plaintiff's dental needs.

On September 14, 2007, the plaintiff submitted a DSR asking to make an appointment to get his cavities fixed because his teeth hurt. He also requested partials. On

---

[2] The facts are taken from the parties' proposed findings of fact which are not disputed.

September 17, 2007, defendant Menos provided a response to the plaintiff's DSR, advising the plaintiff that he would be scheduled for the routine wait list for "Filling." Individuals in need of routine fillings are placed on the routine wait list because priority emergency care is always seen first each and every day and the remainder of the dental care is taken from the routine waitlist.

At the time of the plaintiff's September 14, 2007 request, the wait list for dental care consisted of over 200 inmates. In response to plaintiff's September 2007 DSR, defendant Menos also advised the plaintiff that he would be eligible for evaluation for partial dentures after all dental work was completed. According to DOC policy, partial dentures are not provided until all work is completed and they are given the least priority for care.

The plaintiff did not submit any DSRs between September 14, 2007 and February 23, 2008. On February 24, 2008, the plaintiff again requested dental services from defendant Menos. He submitted a DSR indicating that he had been put on the dental list for his cavities and partials in September 2007 and that he was sending the DSR because his teeth still hurt.

On February 25, 2008, defendant Menos responded to the plaintiff's February 24, 2008 DSR, stating that the plaintiff already was listed for treatment as of September 17, 2007, and that there were other requests ahead of his. In addition to responding to the plaintiff's DSR, defendant Menos reviewed the plaintiff's dental records on February 25, 2008 and noted "x 2," which meant this was the second time he had received a request from the plaintiff. He also noted that the plaintiff needed a new exam.

In March of 2008, the plaintiff submitted an undated Interview/Information Request to defendant Meier, stating that he was sent "down here" from Flambeau Correctional Center in

- 5 -

September 2007 for dental. The plaintiff wrote that he had been waiting for over five and a half months to get his teeth fixed. The plaintiff indicated that his teeth hurt, some were missing, and that he could not chew his food properly. He asked what could be done.

On March 10, 2008, defendant Menos responded to the plaintiff's Interview/Information Request. He advised the plaintiff that he was waitlisted based on his previous request on September 17, 2007, and that he would be seen when it was his turn. Defendant Menos indicated that, at that time, there were patients that had requests prior to his and that patients with emergencies must be seen first every day. On March 10, 2008, defendant Menos accessed the plaintiff's dental records and noted "x 3," which meant that was the third time he had received a request from the plaintiff.

On or about March 13, 2008, the plaintiff filled an Offender Complaint related to dental care. The plaintiff appealed this grievance all the way to the DOC secretary. This was the only Offender Complaint complaining of the lack of dental care which the plaintiff filed while he was at FLMCI.

The Inmate Complaint Examiner (ICE) contacted defendant Menos about the complaint. Defendant Menos then reviewed relevant portions of the plaintiff's dental record and provided relevant information to the ICE assigned to that Offender Complaint. On March 18, 2008, defendant Menos accessed the plaintiff's dental records and noted "upgrade essential/new exam xr," which meant that the plaintiff was upgraded from routine care, but not to emergent care.

There are three levels of dental care: (1) routine care; (2) essential care; and (3) emergent care. Routine care is general dental or chronic needs. Essential care is care that should be provided within a six month period to prevent a probable acute episode. Emergent

care means that an inmate should be seen immediately or an acute episode is highly possible.

On March 21, 2008, six months after the plaintiff filed his initial DSR, defendant Menos examined the plaintiff and x-rays were taken. Defendant Menos informed the plaintiff that he needed anterior resin fillings and fillings on tooth #29 and tooth #13. He also advised the plaintiff that he needed his teeth cleaned. Defendant Menos noted that the plaintiff "would need a complete written evaluation for a partial denture and a Class III approval/filing to the dental supervisor for a partial approval." (Affidavit of Jeffrey G. Menos, D.D.S. [Menos Aff.], ¶ 15]. Defendant Menos indicated that the plaintiff should be upgraded from routine to essential needs, but not emergent care.

On March 25, 2008, the plaintiff was seen by a dentist from Oakhill Correctional Institution who did the anterior resin fillings on tooth #7 and tooth #8 that defendant Menos recommended on March 21, 2008. On April 1, 2008, the plaintiff submitted a DSR stating that he had four cavities fixed on March 25, 2008. He also stated that it had been a week since his fillings and his teeth where the cavities were fixed were extremely sensitive to the point of severe pain when he would drink something cold. He indicated that it was also swollen behind the teeth. The plaintiff requested to be seen.

On April 2, 2008, defendant Menos provided a response to the plaintiff's April 1, 2008, DSR. Defendant Menos advised the plaintiff that a priority appointment would be made and that he would be brought for evaluation.

On April 3, 2008, defendant Menos saw the plaintiff for dental treatment and he noted the plaintiff's prior evaluation on March 25, 2008. Defendant Menos also noted that the fillings done by the Oakhill Correctional Institution dentist on March 25, 2008, "look great."

(Menos Aff. at ¶18 Exh. 1001)  Defendant Menos noted increased sensitivity and ordered one x-ray. Defendant Menos discussed extraction if the plaintiff continued to have pain because tooth #9 and tooth #10 were already extracted.  Defendant Menos gave the plaintiff a prescription for ibuprofen 600 milligrams for sensitivity/pain.  Ibuprofen is a nonsteroidal anti-inflammatory drug (NSAID), which works by reducing hormones that cause inflammation and pain in the body. Ibuprofen is used to reduce fever and treat pain or inflammation caused by many conditions such as a toothache.

On April 4, 2008, the plaintiff submitted a DSR, stating that he had three more cavities that needed to be fixed.  He also asked about partials because of his missing teeth. The plaintiff indicated that his teeth hurt because of cavities and he could not chew his food properly because of missing teeth.  He also requested a teeth cleaning.  On the same day, defendant Menos provided a response to the DSR.  He advised the plaintiff that he was on the routine waitlist and on the teeth cleaning waitlist.  Defendant Menos also indicated that all fillings must be completed before he was eligible for partials.

On April 7, 2008, defendant Menos accessed the plaintiff's dental records and noted that a DSR had been received from the plaintiff.  Defendant Menos also noted that plaintiff was on the "clean/fill," which meant he had submitted a request to have his teeth cleaned. The plaintiff did not submit any further DSRs between April 4, 2008, and the date that he was transferred to another institution.

For the time period from September 14, 2007, through June 4, 2008, the plaintiff was seen approximately eight times by HSU medical and nursing staff and did not complain about dental pain.  Of these eight times, three occurred  between September 15, 2007 and February 24, 2008.  The plaintiff's Health Services Unit (HSU) file indicates that he has been

prescribed and/or purchased the following medications that help with pain: Ibuprofen (April 18, 2007, p. 000163; May 25, 2007, pp. 000103 and 000163; May 25, 2007, p. 000088; April 3, 2008, p. 000161; December 26, 2008, p. 000161), Naproxen (June 13, 2007, p. 000103; June 15, 2007, pp. 000088 and 000162; June 28, 2007, p. 000162), Tylenol (December 23, 2007, p. 000087), Acetaminophen (December 23, 2007, p. 000162; April 3, 2008, p. 000101; May 24, 2008, p. 000080), and Aspirin (December 28, 2007, pp. 000102, 000160, and 000162; March 22, 2008, p. 000083; September 9, 2008, p. 000161).

## ANALYSIS

In moving for summary judgment, the defendants assert that the plaintiff's claims against defendant Meier should be dismissed because defendant Meier was not personally involved in the alleged Constitutional deprivation at issue in this case. The defendants further assert that they were not deliberately indifferent to the plaintiff's dental needs. Specifically, the defendants assert that without additional DRS's, Offender Complaints or other communication, they could not have known, and subjectively did not know, that the plaintiff had a serious medical need from September 14, 2007, to February 23, 2008.

The defendants further assert that although the plaintiff filed a DSR on February 24, 2008, and an Interview/Information Request form in March of 2008, both simply stated that his teeth still hurt. Moreover, according to the defendants, shortly after receiving the plaintiff's Interview/Information Request form and the filing on an Offender Complaint by the plaintiff, defendant Menos upgraded the plaintiff's classification from routine care to essential care. Thereafter, on March 21, 2008, defendant Menos examined the plaintiff and x-rays were taken. Thus, according to the defendants, once they subjectively knew that the plaintiff had a serious medical need, they responded appropriately and not with deliberate

indifference.

The defendants also contend that the plaintiff's official capacity claims against the defendants fail as a matter of law. Finally, the defendants maintain that even if the plaintiff established an Eighth Amendment violation, they are entitled to qualified immunity.

In response, the plaintiff asserts that in response to his September 2007 DSR, defendant Menos should have done something other than placing him on the routine wait list. The plaintiff relies on Berry v. Peterman, 604 F.3d 435 (7th Cir. 2010), asserting that the facts in this case are more egregious than the facts in Berry. The plaintiff maintains, therefore, that the defendants were deliberately indifferent to his serious medical need and their motion for summary judgment should be denied.

Official Capacity Claims

The plaintiff has brought suit against the defendants in both their personal and official capacities. In regard to the official capacity claims, a suit against a state official in his or her official capacity is a suit against the official's office. As such, it is not different than a suit against the state itself. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The plaintiff's official capacity claims against defendants are therefore claims against the state. The Eleventh Amendment bars suits for damages in federal court against unconsenting states unless Congress has exercised its power to override the immunity. Id. at 66.

In this case, the plaintiff only seeks compensatory and punitive damage. Accordingly, the plaintiff's official capacity claims must be dismissed as "the defendants are immune from suit under § 1983 for monetary damages in their official capacities." Maddox v. Love, 2011 U.S. App. LEXIS 17680, at *15 (7th Cir. Aug. 24, 2011). Moreover, as the plaintiff is no longer incarcerated at FLMCI or any other Wisconsin institution, any arguable claims for

declaratory or injunctive relief are moot.  See Id.

Personal Involvement

To succeed under § 1983, the plaintiff must show that the state officials named as defendants were personally involved in depriving the plaintiff of a constitutional right.  Since 42 U.S.C. § 1983 creates a cause of action against a "person," in order "'[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'"  Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006) (quoting Gentry v. Duckworth, 65 F.3d 555, 561 [7th Cir. 1995]).  "To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."  Johnson, 444 F.3d at 583 (citation and internal quotation omitted).  The plaintiff cannot simply attribute constitutional violations to them by the doctrine of respondeat superior.  See Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001); Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996).  In Sanville, the court elaborated:

> [T]o be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." Chavez, 251 F.3d at 651 (quotation omitted); see also Wolf v. Lillie, 699 F.2d at 869 ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault."). A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." Chavez, 251 F.3d at 652. This definition recognizes that the individual does not have to have participated directly in the deprivation. See McPhaul v. Board of Comm'rs of Madison Co., 226 F.3d 558, 566 (7th Cir. 2000) (quotation omitted).

266 F.3d at 740.

In this case, the undisputed facts establish that defendant Menos responded to all of the plaintiff's DRS's and the plaintiff's one Interview/Information Request while the plaintiff was housed at FLMCI.  The undisputed facts also establish that defendant Meier did not respond to the plaintiff's DSR's or his Interview/Information Request relating to his dental

needs. In addition, defendant Meier did not personally provide any medical treatment to the plaintiff and did not have any involvement in determining the priority of the plaintiff's dental needs.

The plaintiff failed to establish defendant Meier knew about defendant Menos' alleged conduct and facilitated it, approved it, condoned it, or turned a blind eye to it. See Johnson, 444 F.3d at 583. Accordingly, the plaintiff failed to establish defendant Meier's personal involvement and defendant Meier will be dismissed from this action.

Eighth Amendment

To establish liability under the Eighth Amendment, a plaintiff must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Ill., 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 [7th Cir. 1997]). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Gutierrez, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary

infliction of pain. See Reed v. McBride, 178 F.3d 849, 852-53 (7th Cir. 1999); Gutierrez, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Thus, a prison official acts with deliberate indifference when he acts "intentionally or in a criminally reckless manner." Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001) (citing Farmer, 511 U.S. at 840-42).

In determining whether an official's conduct rises to the level of deliberate indifference, a court may not look at the alleged acts of denial in isolation; it "must examine the totality of an inmate's medical care." Gutierrez, 111 F.3d at 1375. In Gutierrez, the court found that isolated incidents of delay during ten months of prompt, extensive treatment did not amount to deliberate indifference. Id. Similarly, in Dunigan v. Winnebago County, 165 F.3d 587, 591 (7th Cir. 1999), "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to avoid summary judgment. Moreover, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996).

Not every "ache and pain or medically recognized condition involving some

discomfort can support an Eighth Amendment claim." Gutierrez, 111 F.3d at 1372. "A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue – the sorts of ailments for which many people who are not in prison do not seek medical attention – does not by its refusal violate the Constitution." Id. (quoting Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996); see also, Gibson v. McEvers, 631 F.2d 95 (7th Cir. 1980) (failure to treat a common cold did not constitute deliberate indifference to a serious medical need); Snipes v. DeTella, 95 F.3d 586, 591 n.1 (7th Cir. 1996) (a toe whose toenail had been removed did not constitute a serious medical need, although no doubt painful); Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996) (a mild case of asthma which was allegedly exacerbated by second-hand tobacco smoke did not rise to the level of seriousness sufficient to support a claim for relief).

In this case, there is no dispute that the plaintiff suffered from an objectively serious medical need. "Tooth decay can constitute an objectively serious medical condition because of pain and risk of infection." Berry, 604 F.3d at 440. Nonetheless, the defendants assert that they either were not subjectively aware of the plaintiff's serious medical need or were and, therefore, were not deliberately indifferent to the plaintiff's serious medical need.

A delay in treatment may constitute deliberate indifference if the delay exacerbated an inmate's pain. McGowan v. Hulick, 612 F.3d 636, 639 (7th Cir. 2010) (citing Estelle, 429 U.S. at 104-05; Gayton v. McCoy, 593 F.3d 610, 619 (7th Cir 2010). In this case, however, nothing in the record supports a conclusion that the delay in treatment exacerbated the plaintiff's pain. The plaintiff filed his first DSR on September 14, 2007, soon after his transfer to FLMCI. The plaintiff did not file another DSR until February 23, 2008. Defendant Menos, therefore, had no knowledge of the severity of the plaintiff's pain between

September 14, 2007, and February 23, 2008. Moreover, the undisputed facts establish that during the relevant time period the plaintiff saw HSU medical and nursing staff who could have addressed the plaintiff's pain.

The undisputed facts do not support either of the plaintiff's assertions that he lodged "complaints of escalating pain" or that he informed defendant Menos that "the medication was not working." (Plaintiff's Response Brief [Response] at 5). Rather, the plaintiff only indicated that his teeth hurt. "It is well-settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact." Hall v. Bodine Elec. Co., 276 F.3d 345, 354 (7th Cir. 2002) (citing Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 [7th Cir. 1998]). Additionally, the plaintiff maintains that he was classified as a "level" 30 and, thus, defendant Menos "knew full well that making [him] wait over six months was against [his] dental classification." (Response at 4). However, the exhibit cited by the plaintiff is from the year 2003. The undisputed facts establish that on September 13, 2007, L. Cihlar, R.N., completed a Transfer Screening form noting no dental needs. From September 2007 until March 17, 2008, the plaintiff's dental needs were classified as "routine." On March 18, 2008, defendant Menos upgraded the plaintiff from routine care, but not to emergent care.

The facts of this case are clearly distinguishable from the facts of Berry cited by the plaintiff. In Berry, the plaintiff, who was temporarily transferred to Waushara County Jail as a result of overcrowding at DOC facilities, alleged a jail nurse, doctor, and administrator were deliberately indifferent to his tooth pain and decay. 604 F.2d at 438. Shortly before his transfer he was classified as "level 20" meaning he had routine or chronic dental needs and

appeared unlikely to suffer an acute dental episode in the next six months.[3]  The plaintiff

complained of increasing pain and headaches eight times between April 3rd and May 1st.

Id.  The plaintiff also indicated that the pain medication was ineffective and the pain was

affecting his sleeping and eating.

        The nurse and doctor told the plaintiff to take over-the-counter pain relievers, but

refused to refer him to a dentist.  (Waushara County Jail had no on-site dentist).  Id. at 438-

39.  The plaintiff continued to experience serious pain for an additional month at which time

he was returned to a state facility where he saw a dentist who performed a root canal the

same day.  The court of appeals for this circuit affirmed the district court's granting of

summary judgment to the jail administrator, but reversed as to the jail nurse and doctor. The

appellate court concluded that a reasonable jury could infer the doctor and nurse acted with

deliberate indifference toward the inmate's condition by persisting in an easy, but ineffective,

course of treatment that subjected him to two months of serious but avoidable pain.  Id. at

437-38.

        To the contrary, in this case, plaintiff's requests for dental care were sporadic; his

second filed more than five months after his first.  Additionally, the plaintiff's requests only

indicated that his teeth "hurt."  He did not explain the type or severity of the pain he was

suffering.  Nevertheless, defendant Menos promptly responded to the plaintiff's first DSR by

placing him on the wait list for routine care.  The undisputed facts establish that individuals

in need of routine fillings are placed on the routine wait list and, at the time of the plaintiff's

September 14, 2007, request, the wait list for dental care consisted of over 200 inmates.

        In Berry both the nurse and the doctor were subjectively aware of the plaintiff's pain,

---

3  As previously explained, the plaintiff's assertion that he was classified as a "level" 30 during the relevant
time period, whereas the plaintiff in Berry was only classified as a "level" 20, has no support in the record.

but refused to refer him to a dentist. In the instant case, once defendant Menos became subjectively aware of the plaintiff's pain, he examined and x-rayed the plaintiff, upgraded the plaintiff from routine to essential needs and recommended a treatment plan for him. The plaintiff also was seen promptly seen by defendant Menos when he complained of severe pain after two of his teeth were filled.

In this case, the plaintiff has not established that the defendants were "subjectively aware of the [his] serious medical need" prior to March 2008. See Wynn, 251 F.3d at 593. In addition, the plaintiff has not established that after March 2008, the defendants "disregarded an excessive risk that a lack of treatment posed to [his] health or safety." See id. Because the plaintiff failed to establish that the defendants deliberately failed to provide proper treatment, his claim of a violation of his Eighth Amendment rights must fail. See Steele v. Choi, 82 F.3d 175, 179 (7th Cir. 1996). Accordingly, based on the foregoing, the defendants' motion for summary judgment will be granted. Because the plaintiff has not established the deprivation of a constitutional right, it is not necessary for the court to decide whether the defendants would be entitled to qualified immunity. See Wilson v. Layne, 526 U.S. 603, 609 (1999).

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment be and hereby is **granted**. (Docket #54).

**IT IS FURTHER ORDERED** that this case shall be dismissed.

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of September, 2011.

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge
